" Rosina Bellanca ", Petitioner, *v.* " Peter Bellanca ", Respondent.*

Domestic Relations Court of City of New York, Family Court, New York County, July 6, 1950.

---

\* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482).

*John P. McGrath, Corporation Counsel* (*Aaron Arnold* of counsel), for petitioner and Department of Welfare of City of New York.

No appearance for respondent.

SICHER, J. This is a novel proceeding, instituted under New York Uniform Support of Dependents Law at the instance of the department of welfare of the city of New York because respondent's wife and child are public charges (being recipients of home relief assistance).

The petitioner-wife is an Italian war bride. She married respondent on September 4, 1947, at Cefalu, Sicily, where she lived and met him, a United States Army World War II veteran.

On December 25, 1947, he brought her to his mother's home at X-Town, Chautauqua County, New York.

On February 28, 1948, during her early pregnancy, petitioner left that abode, allegedly because of respondent's physical abuse and nonsupport. However, in March, 1948, there was a reconciliation, the child ("Maria") was born at X-Town on August 17, 1948, and petitioner remained there with respondent until October 10, 1948, when she left X-Town with the baby and they have since lodged with her sister in New York City. Her reason for leaving respondent was his alleged continued physical abuse, irregular work habits, and inadequate support.

Respondent has since contributed nothing to the maintenance of his wife or child.

Meanwhile, petitioner's sister has housed and fed her and the child with supplemental home relief assistance of $23.25 semi-

monthly from the department of welfare of the city of New York. Except for that sister's merely moral-obligation co-operation, the cost of the wife's and child's maintenance to the City of New York would be appreciably larger.

It is familiar law that a father is chargeable with the support of his child according to his financial ability and station in life, and not merely at the low subsistence level of public relief budgets. And the same standard applies to a wife's maintenance, unless she abandoned her husband unjustifiably or has been unfaithful; in which event, however, his obligation would be at least the minimum duty of exonerating the community from the burden of her support (see *People* v. *McCarthy*, 257 N. Y. 567, affg. 139 Misc. 746; *Hodson* v. *Holmes*, 162 Misc. 226; *Matter of Aronowitz* v. *Aronowitz*, 159 Misc. 103, and *People* v. *Schenkel*, 258 N. Y. 224).

The reasonable needs of the dependent wife and child named in the petition for support from respondent I have adjudged to be the sum of $25 per week. Whether respondent is in position to pay that much is another matter. But the needs are at least that amount.

It is reported that respondent refuses to contribute a penny toward the support of his wife and child in New York City but that he offers to maintain them without public assistance if they return to live with him in X-Town. Petitioner refuses to return because of fear of him stemming from alleged past brutalities.

Thus, there is involved a question whether the particular facts bring this case within the common-law principle that " It is the duty of the husband to support his wife, but he is not bound to support her away from his home, even though such home may be disagreeable to her " (*People ex rel. Comrs. of Charities* v. *Cullen*, 153 N. Y. 629, 635), or whether, as prima facie shown by petitioner's testimony, the instant situation is of a kind described as follows in subdivision 6 of section 92 of the Domestic Relations Court Act of the City of New York:

" § 92. *Powers*.

" In the exercise of its jurisdiction the [Family] court shall have power * * * (6) To make an order for support of a wife by the husband, even though she may have left the home, in cases where the husband's conduct or condition or his cruel or inhuman behavior made it unsafe, improper or undesirable for her to continue to live with him." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 6.)

As I have previously commented: " Convictions of the husband as a ' disorderly person ' under criminal statutes predi-

cated on abandonment of a wife allegedly likely to become a burden on the public have been frequently reversed on the square ground that the accused was willing, able, and offered in good faith to provide for such wife in a joint home. (*People* v. *Pettit et al.*, 74 N. Y. 320; *People ex rel. Feeney* v. *Dershem*, 78 App. Div. 626; *People ex rel. Demos* v. *Demos*, 115 App. Div. 410; cf. *People ex rel. Mueller* v. *Mueller*, 164 App. Div. 386.) However, those statutes, being penal, were subject to strict construction, and decisions thereunder are not necessarily determinative of the question whether subdivision 4 of section 137 of the Domestic Relations Court Act may not constitute a subsequent mandate of the Legislature for a contrary conclusion in a civil proceeding (see *Matter of Kane* v. *Necci*, 269 N. Y. 13) under the Domestic Relations Court Act of the City of New York." (" *Salvatore* " v. " *Salvatore* ", 185 Misc. 309, 312.)

Apart from any question of fact concerning respondent's legal obligation to petitioner, in any event he is seemingly chargeable at least with support of the child and should not expect her to be maintained, to any extent, by the department of welfare of the city of New York.

In this case there had to be recourse to the recently enacted New York Uniform Support of Dependents Law (L. 1949, ch. 807, as amd.) because respondent could not otherwise be brought before the New York County Family Court for lack of all of the residential jurisdiction requirements of subdivision 1 of section 103 of the Domestic Relations Court Act of the City of New York. Paragraph (a) thereof calls for respondent's residing or being domiciled in the city of New York, regardless of the domicile of the petitioning dependents; paragraph (b) calls for personal service of process upon the respondent within the city of New York and the condition that the petitioner be so residing or domiciled at the time of the filing of petition for support and also still at the time of issuance of the summons or warrant; and paragraph (c) is invokable only if the failure to support or abandonment shall have occurred within the city of New York and still continues at the time of the filing of the petition for support of dependents then residing or domiciled in the city of New York.

These two parties never resided together within the city of New York, and respondent cannot now be " found " therein for service of process within its territorial limits, unlike the respondent considered in *Matter of Buoneto* v. *Buoneto* (278 N. Y. 284).

Therefore, until the enactment of the New York Uniform Support of Dependents Law respondent had been immune from enforcement of any duty of support of his wife and child so long as he stayed away from New York City.

The New York Uniform Support of Dependents Law has for the first time made available an effective remedy to enforce the duty of support of the wife or child of a husband-father who is not within the territorial jurisdiction of the place of sojourn of his dependents. Out of a widespread concern over the inadequacy of existing laws there has recently been evolved a plan for enactment of substantially similar and reciprocal Uniform Support of Dependents civil statutes eventually in all the States, territories and possessions of the United States, designed effectually to compel support by a deserting or indifferent spouse or parent even though the dependents reside in one locality and he in another. That is a logical extension of the modern tendency away from the original concept of treating nonsupport as a criminal offense towards placing nonsupport proceedings under the jurisdiction of civil juvenile and family courts, in recognition of the frequent causal relation between nonsupport, desertion, or other marital conflict, and child delinquency and neglect.

Chapter 807 of the Laws of 1949, as slightly amended in 1950 (L. 1950, ch. 401), provides such a plan in terms which expressly cover not only respondents in other States but also in other parts of New York State. For example:

" § 3. *Persons legally liable for support of dependents.* For the purpose of this act: (a) A husband in one state is hereby declared to be liable for the support of his wife and any child or children under seventeen years of age and any other *dependent residing or found in the same state* or in another state having substantially similar or reciprocal laws, and, if possessed of sufficient means or able to earn such means, may be required to pay for their support a fair and reasonable sum according to his means, as may be determined by the court having jurisdiction of the respondent in a proceeding instituted under this act. (Emphasis supplied.)

" § 4. *Jurisdiction and powers of court.* For the purposes of this act: (a) The court shall have jurisdiction regardless of the state of last residence or domicile of the petitioner and the respondent and whether or not the respondent has ever been a resident of the initiating state or the dependent person has ever been a resident of the responding state.

"§ 5. *Cases in which proceedings are maintainable.* A proceeding to compel support of a dependent may be maintained under this act in any of the following cases: (a) Where the petitioner and the respondent are residents of or domiciled or found in the same state."

The New York County Family Court Division of the Domestic Relations Court of the City of New York has therefore accepted this petition under New York Uniform Support of Dependents Law; and the exemplified papers contemplated in section 6 thereof, together with a transcript of the minutes of a June 26, 1950, hearing before me, are being transmitted to the Chautauqua County Court with the request that such court fix the time and place for a hearing on the petition and issue a summons directed to respondent and duly requiring him to appear at such time and place pursuant to subdivision (d) of section 6, so that this proceeding may be carried forward under the provisions of sections 6 and 7 for the entry of an order of the Chautauqua County Court directing respondent to contribute stated periodic sums toward support of his wife and child (now public charges of the City of New York) and providing for the collection and transmission of such support moneys pursuant to section 6.

This proceeding comes squarely within the unambiguous language of subdivision (a) of section 5 of the New York Uniform Support of Dependents Law. However, there may be some slight doubt whether the Legislature transcended its authority in enacting that provision. The legislative authority, conferred by section 18 of article VI of the New York State Constitution, is to " establish children's courts, and courts of domestic relations, as separate courts or parts of existing courts or courts hereafter to be created " and to " confer upon them such jurisdiction as may be necessary  *  *  *   to compel the support of a wife, child  *  *  *   by persons legally chargeable therewith who abandon or neglect to support any of them." But that constitutional grant of power is restricted by a prohibition that " the legislature shall not hereafter confer upon any inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article ".

Section 67 of the Civil Practice Act reads:

" § 67. *Jurisdiction of county court.* The jurisdiction of each county court extends to the following actions and special proceedings, *in addition to the jurisdiction, power and authority*

*conferred upon a county court in a particular case by special statutory provision* [emphasis supplied]:  *  *  *

" 3. To an action for any other cause, where the defendant, or if there are two or more defendants, where all of them, at the time of the commencement of the action, *reside* in the county, *  *  * and wherein in any such action the complaint demands judgment for a sum of money not exceeding three thousand dollars."

The respondent herein resides in Chautauqua County, and the petition institutes a special proceeding. However, since its prayer is merely for a " reasonable order for support ", it might be advisable to incorporate in any order the proviso that it shall cease to operate when and if the amount of payments thereunder shall have aggregated $3,000.

Of course, any question of constitutionality should in the first instance be resolved in favor of petitioner. " The presumption is that the section is constitutional and the burden rests upon the respondent to establish that it is not." (*Matter of Buoneto* v. *Buoneto,* 278 N. Y. 284, 286, *supra.*) Moreover, that opinion, in referring to a case involving identical language in the Constitution of 1894, states (pp. 287–288): " The words ' any greater jurisdiction in other respects than is conferred upon County Courts by or under this article ' were construed to mean that ' The framers of the Constitution, in contemplating the creation of inferior local tribunals by the legislature and limiting its power, were not dealing with the jurisdiction of these future courts as to territory, non-resident parties defendant or foreign corporations, but as to subject-matter; they were not to have, in a general way, greater powers, importance and dignity than a County Court ' ".

There remains a final question as to whether either the Chautauqua County Court or its Children's Court Part comes within subdivision (b) of section 2 of the aforesaid New York Uniform Support of Dependents Law, which defines the courts in this State empowered to enforce that statute.

The support proceedings provision of article III-A (as added by L. 1942, ch. 810) of the Children's Court Act of the State of New York (L. 1922, ch. 547, as amd.) is inapplicable to Chautauqua County. For, section 1 of that act expressly excludes from its scope Chautauqua County, which has its separate Children's Court Act (L. 1918, ch. 464).

Seemingly, in Chautauqua County failure to support is still solely the subject of " Disorderly Persons " prosecutions under the Code of Criminal Procedure (tit. VII, § 899 *et seq.*), which

is a special proceeding of a criminal nature (1930, Atty. Gen. 326); and the New York Uniform Support of Dependents Law contemplates a civil remedy only.

(Supplemental opinion, August 28, 1950.)

For the reasons set forth in the three concluding paragraphs of the foregoing July 6, 1950, opinion, the subject-matter jurisdiction of Chautauqua County Court or of its Children's Part to entertain this proceeding is properly doubted by Chautauqua County Children's Court Judge ROBERT N. PALMER. However, he arranged a voluntary informal conference (at X-Town) with the husband concerning the averments of the petition and the wife's initial testimony under it, and has communicated to this court the husband's version, which, in turn, has been taken up with the wife here. She still persists in her assertions of his brutality and her consequent unwillingness to resume living with him, either in Chautauqua County or in New York City, would welcome the separation action he threatens to institute unless she return, and she will now begin to manage to maintain herself and the child meanwhile without further department of welfare of the city of New York assistance.

Accordingly, this proceeding is hereby dismissed.

But with Judge PALMER's effective co-operation the filing of the petition and the referral to the Chautauqua County Court will have been fruitful, in having stimulated a Supreme Court adjudication of the issues of cruelty or abandonment, custody, and support and the removal of the wife and child from the public relief rolls. Moreover, the procedure herein may serve as a guide for Uniform Support of Dependents Law cases in all Counties except Chautauqua and Ontario (which alone do not come within either the Children's Court Act of the State of New York or the Domestic Relations Court Act of the City of New York).